IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WASATCH TRANSPORTATION,<br><br>Plaintiff,<br><br>v.<br><br>FOREST RIVER,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER<br>GRANTING DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT**<br><br>Case No. 2:17-cv-752<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Wasatch Transportation sued Defendant Forest River (doing business as "Glaval") for breach of an oral warranty, breach of an implied warranty of fitness for intended use, fraudulent inducement, and negligent misrepresentation.[1] Forest River moves for summary judgment. For the following reasons, the court grants Forest River's motion.

I.

In October 2013, Wasatch Transportation entered into a five-year, fixed-rate contract with the Utah Department of Transportation to operate a bus route between Salt Lake City and Blanding. *See* Dkt. No. 81-1 at 8:13–9:21, 20:10–24; Dkt. No. 27 ¶ 7; Dkt. No. 81-3 at 2. The next month, Wasatch Transportation's representative, Steven Fuller, flew to Indiana and met with several bus manufacturers, including Forest River, to discuss purchasing buses for this route. *See* Dkt. No. 81-4 at 22:6–17, 20:22–21:10. The route is a difficult "350-plus-mile

---

[1] Wasatch Transportation also sued Freightliner Custom Chassis Corporation and Daimler Trucks North America. Wasatch Transportation has settled its claims against these defendants. *See* Dkt. No. 115.

1

roundtrip journey" with "substantial elevation changes" and "inclement weather depending on the time of year, from very, very hot to very, very cold." Dkt. No. 81-4 at 25:19–24.

Mr. Fuller met with various Forest River's representatives during his visit. *See* Dkt. No. 81-4 at 23:25–24:4. At his deposition, Mr. Fuller testified that these individuals made specific representations about the quality and suitability of the Forest River buses. Mr. Fuller testified that he asked Heidi Smart, Forest River's sales liaison and Vice President of Sales, whether the buses would be able to handle the Salt Lake City–Blanding route and she represented that they could. *See* Dkt. No. 81-4 at 25:11–26:8. Mr. Fuller testified that Forest River's general manager, Phil Hayes, likewise represented that the buses were "great buses" and would be a good fit for this route. Dkt. No. 81-4 at 28:21–29:8. Mr. Fuller further testified that when he expressed concern about obtaining parts for the buses in the future, Mr. Hayes assured him that the buses were part of an ongoing line and Forest River "fully intended to continue to support building parts for them." Dkt. No. 81-4 at 29:9–19. And Mr. Fuller testified that a third Forest River representative provided assurances that the buses were "[q]uality buses" and that Forest River "would take really good care of the buses, and they would be amazing when they were done." Dkt. No. 81-4 at 31:24–32:23.

On January 16, 2014, Wasatch Transportation ordered three buses from Forest River for use on the Salt Lake City–Blanding route. *See* Dkt. No. 81-1 at 20:17–24, 105:23–106:3; Dkt. No. 27 ¶ 16. These buses were built to order for Wasatch Transportation. *See* Dkt. No. 81-5 at 17:4, 29:10–30:5. Wasatch Transportation's representatives traveled to Indiana to pick up the completed buses on June 12, 2014, June 24, 2014, and July 3, 2014. *See* Dkt. No. 27 ¶¶ 18, 21, 25. Forest River provided a five-year, 100,000-mile written limited warranty for each bus. *See* Dkt. No. 81-6; Dkt. No. 81-4 at 64:2–10. After the first bus arrived in Salt Lake City but before

the second and third buses arrived, Ryan Fuller of Wasatch Transportation visited the Forest River factory. *See* Dkt. No. 81-1 at 48:22–49:18. At his deposition, Mr. Fuller testified that, during that visit, Mr. Hayes repeated his assurance that the buses were part of an ongoing product line and there were "no plans whatsoever to discontinue this bus." *See* Dkt. No. 81-1 at 50:5–22.

Wasatch Transportation alleges that the statements made by Forest River's representatives constituted an express warranty and that Forest River breached this warranty. *See* Dkt. No. 27 ¶¶ 33–37. Based on the same statements, Wasatch Transportation asserts claims for breach of an implied warranty of fitness for intended use, fraudulent inducement, and negligent misrepresentation. *See* Dkt. No. 27 ¶¶ 44–48, 49–60; 61–72. Forest River has moved for summary judgment on all of these claims. *See* Dkt. No. 81.

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up).

### III.

The court first turns to Wasatch Transportation's breach-of-warranty claims. As noted, Wasatch Transportation asserts that the statements made by Forest River's representatives constituted an express warranty and also gave rise to an implied warranty that the buses were fit for their intended use on the Salt Lake City–Blanding route. *See* Dkt. No. 81-4 at 25:11–26:8, 28:21–29:8, 29:9–19; Dkt. No. 81-1 at 50:5–22.

The written limited warranty provided by Forest River, however, expressly states that "[t]his warranty is exclusive and in lieu of all other warranties of any kind whether written, oral, or implied, including, but not limited to, any warranty of merchantability or fitness for a particular purpose" and "cannot be amended by any dealership, salesperson, or agent." Dkt. No. 81-6 at 6. Wasatch Transportation does not seriously dispute that its breach-of-warranty claims are foreclosed by this provision if it is bound by the written limited warranty.

Instead, Wasatch Transportation argues that it is not bound by this provision because it was not provided the written limited warranty until after the buses had been ordered, manufactured, and delivered. *See* Dkt. No. 100 at 6; *see also LWT, Inc. v. Childers*, 19 F.3d 539, 541 (10th Cir. 1994) ("a limitation or disclaimer of warranties will be given effect only if it formed part of the basis of the bargain when the sales contract was entered into"); *Sanco, Inc. v. Ford Motor Co.*, 771 F.2d 1081, 1086 (7th Cir. 1985) ("a seller may not 'spring' a warranty disclaimer on a customer after a sale has been consummated").[2]

---

[2] In its response to the motion for summary judgment filed by the defendants with whom it now has settled, Wasatch Transportation argued that a different limited warranty, provided by Freightliner Custom Chassis Corporation, was not binding because it "fail[ed] of its essential purpose." Dkt. No. 107 at 14. But Wasatch Transportation did not argue in its response to Forest River's motion for summary judgment that the written limited warranty provided by Forest River failed of its essential purpose. Although counsel for Wasatch Transportation stated at the hearing held on Forest River's motion for summary judgment that Wasatch Transportation wished to

4

Forest River argues that the evidence clearly establishes that there is no genuine dispute that Wasatch Transportation's representatives had the opportunity to review the written limited warranty and were aware of its terms before purchasing the buses. The court agrees.

In particular, Mr. Fuller's deposition testimony makes clear that he had reviewed the written limited warranty and was aware of its terms before Wasatch Transportation purchased the buses. When asked about his November 2013 visit to Forest River, Steven Fuller testified as follows:

> Q: Did you ask any questions during this November visit to Glaval about its warranty?
>
> A: Absolutely.
>
> Q: And what—what were you told?
>
> A: I can't remember the specific discussions pertaining to the warranty, other than I was pleased about how long it was and *what it covered*.

Dkt. No. 81-4 at 38:2–12 (emphasis added). Mr. Fuller's statement that he was pleased with "what it covered" is telling. It indicates that he was aware of what the limited warranty "covered" and not merely "how long it was."

Mr. Fuller further testified that he had researched and reviewed the warranties of all of the potential manufacturers:

> Q: And did you understand what the terms of the Freightliner warranty were?
>
> A: Probably.
>
> Q: What about the Cumins engine warranty?
>
> A: I probably understood those as well.

---

incorporate this argument from the other briefing, *see* May 17, 2021 Hearing Recording at 1:05:21, the court concludes that this did not suffice to raise the argument properly, *see Deseret Trust Company v. Unique Investment Corporation*, 2018 WL 8110959 *3–4 (D. Utah 2018). Forest River has thus waived this argument.

> Q: You were pretty thorough in your work; weren't you?
>
> A: I believe I was, yes.
>
> Q: Did you ask to see any of the warranties from any of these manufacturers?
>
> A: I believe I reviewed all the warranties from all the manufacturers. Maybe not for our specific buses, but based on, you know, the website or brochures and things like that.

Dkt. No. 81-4 at 38:19–39:7.

When Mr. Fuller was asked whether he had spoken to Forest River's representative following his in-person visit, he confirmed that he had, and that they discussed the warranties:

> Q: Did you have any further conversations with Heidi [of Forest River] between your visit to Elkhart and the time that the buses were ordered?
>
> A: I'm confident we did, yeah.
>
> Q: And what would you have talked about?
>
> A: Timing. *Warranties.* Bus quality. All the same stuff several times. Specific equipment on the buses, those types of things.

Dkt. No. 81-4 at 46:3–10 (emphasis added).

Indeed, when asked directly, Mr. Fuller admitted that he had reviewed the warranties prior to ordering the buses:

> A: I think they [the warranties] were on the buses when we picked them up from Glaval, actually. There was like a packet that—I believe the—the actual exchange took place when I picked up my bus from, you know, Rick or Heidi. One of those two walked me through the bus and gave me the warranty packet, and then we brought it to Lewis.
>
> Q: And to your knowledge, the warranty packet information was in the other two buses?
>
> A: Correct.
>
> Q: And you had reviewed all of those warranties prior to ordering the buses?

6

      A: That's correct.

      Q: You were very familiar with those?

      A: I was somewhat familiar, yeah.

      Q: Through your homework and research that you had done?

      A: Correct.

Dkt. No. 81-4 at 64:2–18.

      Mr. Fuller's deposition testimony thus leaves no doubt that he reviewed the written limited warranty prior to the purchase of the buses. He testified explicitly that he had not only seen the warranty, but was happy with what it covered. These statements are additionally supported by his assertions that he had researched and reviewed the warranties offered by all of the potential manufacturers before Wasatch Transportation purchased the buses.[3]

      To be sure, after Forest River filed its motion for summary judgment, Mr. Fuller submitted a declaration stating that he had not seen the written limited warranty prior to the purchase of the buses. *See* Dkt. No. 100-3 at 4–9. But this declaration cannot be squared with Mr. Fuller's deposition testimony. And when a declaration conflicts with previous testimony, the declaration "will be disregarded when a court determines that it represents an attempt to create a sham fact issue." *Steele v. Kroenke Sports Enterprises, L.L.C.*, 264 Fed. Appx. 735, 744 (10th

---

[3] It does appear, however, that Mr. Fuller believed the buses would be covered by Forest River's "Gold" warranty rather than its standard limited warranty. But although the Gold warranty lasts longer than the standard limited warranty, it contains essentially the same disclaimer of oral or implied warranties. *See* 89-2 at 4 ¶ 11.

      Significantly, when Mr. Fuller became aware that the buses were not covered by the Gold warranty, he appears to have obtained and reviewed a copy of that warranty before deciding not to pursue the issue further with Forest River. *See* Dkt. No. 81-4 at 73:5–17, 76:19–77:7, 78:1–12. That Mr. Fuller was inclined and able to obtain and review a copy of the Gold warranty further buttresses his testimony that he was able to obtain and review Forest River's written limited warranty before Wasatch Transportation purchased the buses.

Cir. 2008). "Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id*.

Mr. Fuller was certainly cross-examined during his deposition. And there is no reason to believe that he did not have access to the pertinent evidence at the time of his earlier deposition, no indication of newly discovered evidence, and no confusion reflected in the deposition testimony for Mr. Fuller to explain. The court will thus disregard Mr. Fuller's declaration.

The court concludes that a reasonable factfinder would be required to find, based on Mr. Fuller's deposition testimony, that Mr. Fuller had the opportunity to review Forest River's written limited warranty and was aware of its terms prior to the purchase. It follows that the terms of this warranty bind Wasatch Transportation and foreclose its breach-of-warranty claims. The court grants Forest River's motion for summary judgment on these claims.

## IV.

The court next turns to Wasatch Transportation's fraudulent inducement claim**.** The parties dispute whether this claim is governed by Utah law or Indiana law.[4] The court need not resolve that choice-of-law issue, however, because Forest River is entitled to summary judgment on this claim under either State's law.

Under Utah law, a fraudulent misrepresentation claim requires:

---

[4] Although the parties also dispute whether Utah or Indiana law governs Wasatch Transportation's breach-of-warranty claims, they recognize that nothing turns on this choice-of-law issue because both States have enacted the Uniform Commercial Code and apply it in the same manner. *See* Dkt. No. 100 at 20–21. The court accordingly does not decide this issue.

> (1) . . . a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which [the person making the representation] either knew to be false or made recklessly knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that [the other party] acted reasonably and in ignorance of its falsity; and (7) that [the other party] did in fact rely upon it and was thereby injured and damaged.

*Larsen v. Exclusive Cars, Inc*, 97 P.3d 714, 716 (Utah App. Ct. 2004). And under Indiana law, the elements of a fraudulent inducement claim are:

> (1) a material representation of past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party.

*Tru-Cal, Inc. v. Conrad Kacsik Instrument Systems, Inc.*, 905 N.E.2d 40, 44–45 (Ind. Ct. App. 2009) (citation omitted).

Wasatch Transportation claims it was fraudulently induced to purchase faulty buses that were not suited for its needs by Forest River's statements that the buses were "quality buses" capable of servicing the Salt Lake City–Blanding route and were part of an ongoing line. *See* Dkt. No. 81-4 at 25:11–26:8; Dkt. No. 81-4 at 28:21–29:8; Dkt. No. 81-4 at 29:9–19; Dkt. No. 81-1 50:5–21. But given that the written limited warranty expressly provides that it "is exclusive and in lieu of all other warranties of any kind whether written, oral, or implied, including, but not limited to, any warranty of merchantability or fitness for a particular purpose" and "cannot be amended by any dealership, salesperson, or agent," the court concludes that any reliance by Wasatch Transportation on the oral representations made by Forest River's representatives was neither reasonable (under Utah law) nor "rightful" (under Indiana law).

Under Utah law, reliance on an oral statement that is contradicted by language in a written agreement is per se unreasonable. *See Gold Standard, Inc., v. Getty Oil Co.*, 915 P.2d 1060, 1068. To be sure, there is an exception where the party making the oral representation

9

provides a plausible explanation for the discrepancy between the oral representation and the written agreement and represents that the written agreement will not be enforced as written. *See The Cantamar, L.L.C. v. Champagne*, 142 P.3d 140, 150 (Utah Ct. App. 2006). But that exception does not apply here—there is no evidence that Forest River's representatives ever discussed, let alone provided a reason for, the discrepancy between their representations and the written agreement.

And under Indiana law, "it is . . . settled that where persons stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment." *Earl v. State Farm Mutual Automobile Insurance Company*, 91 N.E.3d 1066, 1074 (Ind. Ct. App. 2018) (internal citation omitted). Rather, "when both parties are dealing at arm's length and one party, in spite of the facts well known to him, deliberately ignores such facts and chooses to believe statements to the contrary, he closes his eyes to the truth and deliberately takes a chance. It then cannot be said that he was injured in law. All that can be said is that he gambled and lost." *Id*. (internal citation omitted). In this case, Wasatch Transportation and Forest River contracted on "equal footing" and at "arm's length." Wasatch Transportation's decision to disregard the language of the written warranty and instead rely on oral statements made by Forest River's representatives was a gamble that it lost.

The court grants Forest River's motion for summary judgment on Wasatch Transportation's claim for fraudulent misrepresentation.

## V.

Wasatch Transportation "agrees that its claim for negligent misrepresentation should be dismissed." Dkt. No. 100 at 4 n 1. The court accordingly grants Forest River's motion for summary judgment on this claim as well.

*   *   *

For the foregoing reasons, Forest River's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

DATED this 7th day of August, 2021.

BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge